FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 19, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RINDA F., | NO: 1:18-CV-3006-RMP |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are cross-motions for summary judgment from Plaintiff Rinda F.,[1] ECF No. 11, and the Commissioner of Social Security (the "Commissioner"), ECF No. 12. Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of her claims for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act (the "Act"). *See* ECF No. 11. The Court has reviewed the

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 1

motions and the administrative record, and is fully informed.  The motions were noted without oral argument.  The Court grants the Commissioner's motion for summary judgment, ECF No. 12, and denies Plaintiff's motion for summary judgment, ECF No. 11.

## BACKGROUND

### A. Plaintiff's Claim for Benefits and Procedural History

Plaintiff applied for disability insurance benefits and supplemental security income through an application filed on December 16, 2014.  Administrative Record ("AR") 198–205.[2]  Plaintiff alleged that her onset date was January 1, 2014.  *Id.*  Plaintiff was 43 years old at the time of her alleged onset date.  She completed eleven years of school.  AR 42.  The Commissioner initially denied Plaintiff's applications for disability insurance benefits and supplemental security income, and denied Plaintiff's applications upon reconsideration.  AR 116–22, 125–35.  Plaintiff timely requested a hearing.  AR 138–89.

### B. March 8, 2017 Hearing

A video hearing took place before Administrative Law Judge ("ALJ") M.J. Adams on March 8, 2017, with Plaintiff represented by attorney Thomas Bothwell.[3]

---

[2] The AR is filed at ECF No. 9.

[3] Attorney D. James Tree represents Plaintiff on appeal.

Plaintiff responded to questions from her attorney and Judge Adams. A vocational

expert, Thomas Polsin, also appeared at the hearing.

**C. ALJ's Decision**

On April 18, 2017, the ALJ issued an unfavorable decision for Plaintiff. AR

13–34. Utilizing the five-step evaluation process, Judge Adams found:

**Step one:** Plaintiff had not engaged in substantial gainful activity since her

alleged onset date of January 1, 2014. AR 18.

**Step two:** Plaintiff has the following severe impairments: chronic heart failure

and post lumbar fusion. *Id.*

**Step three:** Plaintiff does not have an impairment or combination of

impairments that meets or medically equals one of the listed impairments in

20 C.F.R. Part 404, Subpart P, Appendix 1. AR 23.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff had

the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(c): she can occasionally lift and/or carry 20 pounds
> and frequently lift and/or carry 10 pounds. She can stand
> and/or walk with normal breaks for a total of about six hours in
> an eight-hour workday. She can sit for a total of about six
> hours in an eight-hour workday. The claimant can push and/or
> pull, including operation of hand and foot controls, unlimited
> other than shown for lift or carry. Except, she can frequently
> climb ramps or stairs. She can occasionally climb ladders,
> ropes, or scaffolds. She can frequently balance, stoop, kneel,
> crouch, and crawl. The claimant does not require any
> manipulative, visual, or communication limitations. She must
> avoid concentrated exposure to vibrations, fumes, odors, dusts,

gases, poor ventilation, and hazards, such as unprotected heights and hazardous machinery.

AR 23.

**Step four:** Plaintiff is capable of performing past relevant work as a Customer Complaint Clerk, which does not require the performance of any work-related activities precluded by the claimant's RFC.  AR 28 (citing 20 C.F.R. §§ 404.1565 and 416.965).

**Step five:** Plaintiff was not disabled for purposes of the Social Security Act.  AR 29.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on November 20, 2017.  AR 1–6.  Plaintiff now seeks judicial review.

## APPLICABLE LEGAL STANDARDS

### A. Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, but less than a preponderance.

ORDER ~ 4

*Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not the reviewing court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

**B. Definition of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

**C. Sequential Evaluation Process**

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920. Step one determines if she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that she has performed in the past.  If the plaintiff is able to perform her previous work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in light of her residual functional capacity and age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th

Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden

is met once the claimant establishes that a physical or mental impairment prevents

her from engaging in her previous occupation.  *Meanel*, 172 F.3d at 1113.  The

burden then shifts, at step five, to the Commissioner to show that (1) the claimant

can perform other substantial gainful activity, and (2) a "significant number of jobs

exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722

F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

**A. Did the ALJ err when finding several impairments were non-severe at step two?**

**B. Did the ALJ err by affording little weight to opinion evidence and determining Plaintiff's Residual Functional Capacity?**

**C. Did the ALJ err when rejecting Plaintiff's subjective testimony?**

## DISCUSSION

**A.    Assessing Severity of Medically Determinable Impairments at Step Two**

Plaintiff argues that the ALJ erred by concluding that several of her

impairments were non-severe, including her migraines, seizure disorder, anxiety,

depression, PTSD, insomnia, and chronic pain disorder.  ECF No. 11 at 5–13.  The

Commissioner argues that the ALJ's findings of non-severity on each of these

impairments is supported by substantial evidence.  ECF No. 12 at 2–7.

At step 2 of the evaluation process, the decision maker determines whether a claimant's impairments are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is considered severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b). Examples of basic work activities include physical functions such as walking, standing, lifting, or carrying; the ability to see, hear, or speak; understanding and acting on simple instructions; appropriate use of judgment; responding to supervision and other social functions; and dealing with changes in a work setting. *Id.* "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individuals [*sic*] ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling 85-28).

The purpose of step two is to screen out weak claims. *See Bowen*, 482 U.S. at 146–47. Regardless of whether an impairment is found severe or non-severe, the impairment must be taken into account when the claimant's RFC is made. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Even if an impairment is improperly labeled as non-severe or simply left out of the step two analysis, the error is harmless if the claimant prevails on step two and the impairment is

considered in the creation of the RFC at step four.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

### *1. Migraine Headaches*

Plaintiff first claims that the ALJ erred by considering her migraines non-severe.  ECF No. 11 at 6–7.  She argues that she visited the emergency room over a dozen times for migraine treatment.  *Id.*  Additionally, she argues her migraine symptoms were more than mild.  *Id.*  To prove the severity of her migraines, she argues that emergency providers noted that she appeared to be "in obvious pain"; that she would experience migraine symptoms for several days before going to the ER; and that the only medicine that cured her symptoms was Dilaudid, a medication administered intravenously at the ER.  *Id.* at 7.  The Commissioner argues that the ALJ's decision on Plaintiff's migraines is supported by the record because medication for her headaches usually worked and Plaintiff usually appeared comfortable during her migraine episodes.  ECF No. 12 at 4–5.

The ALJ concluded that Plaintiff's migraines were non-severe impairments.  AR 18.  Specifically, the ALJ found that the medical records do not show frequent migraine treatment; that Dilaudid usually works in treating the migraine symptoms; that Plaintiff could walk around notwithstanding the migraines' pain; and that she overall appeared comfortable during her migraines.  *Id.* at 19.  With this evidence, the ALJ determined that Plaintiff's migraines were mild in nature.

*Id.* The ALJ concluded that Plaintiff's migraines were non-severe because they did not keep her from performing basic work activities. *Id.*

There is evidence that Plaintiff's migraine headaches were more severe than mild headaches. ER physicians would occasionally observe that Plaintiff's symptoms were worsened by light. AR 438, 479, 488, 571, 999. She occasionally felt nauseous during her migraine episodes. AR 472, 479, 990, 999. Plaintiff frequently described the pain from her migraines as anywhere between an 8 out of 10 to a 10 out of 10. AR 438, 446, 472, 488, 953, 978.

However, there is also evidence that supports the ALJ's finding that the headaches were mild in nature, and thus non-severe. The pain would often be described as mild rather than major or severe. AR 443, 450. Treating physicians and nurses noted that Plaintiff was often comfortable and showed no signs or symptoms of a severe migraine headache. AR 450, 954, 955, 1003. She was able to walk, react to her surroundings, and respond to physicians and nurses during her migraines. AR 572, 954, 955, 1003.

If the evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097. Here, the evidence supports more than one rational interpretation. Some evidence shows that Plaintiff's migraines were severe. Other evidence shows that Plaintiff's headaches were mild in nature, as the ALJ found. But it is not the Court's role to

make its own judgment of the evidence. The Court's task is to determine if the ALJ's decision is supported by substantial evidence. *Sprague*, 812 F.2d at 1229–30.

Here, the evidence supporting the ALJ's conclusion that Plaintiff's migraines were non-severe is substantial. Plaintiff referred to them as mild, physicians and nurses observed that Plaintiff appeared comfortable during the migraine episodes, and she remained alert and observant throughout the migraine attacks. The Court finds that the ALJ did not err in determining that Plaintiff's migraines were non-severe.

### 2. *Seizure Disorder*

Plaintiff argues that the ALJ erred in finding her seizure disorder sporadic, and therefore non-severe, because the nature of seizures is that they are sporadic and cannot continuously occur for 12 months. ECF No. 11 at 8. The Commissioner argues that Plaintiff's evidence does not satisfy the burden required to overturn the ALJ's decision. ECF No. 12 at 4.

The ALJ concluded that Plaintiff's seizure disorder was non-severe because her seizures were sporadic. AR 19. The ALJ noted that Plaintiff had one seizure during a doctor's visit in August 2016 and one seizure in February 2015. *Id.* In January 2017, Plaintiff reported having three seizures over a two-week span, but did not go to the emergency room for these attacks. *Id.* Additionally, the ALJ found that Plaintiff's physicians did not find evidence of repeated seizures. *Id.* The ALJ found that Plaintiff's alleged seizure disorder did not meet the durational

requirement for severity, which is a physical impairment that has lasted or can be expected to last for a 12–month period. *Id.* For these reasons, the ALJ found that Plaintiff's seizure disorder was non-severe. *Id.*

The record shows Plaintiff suffered from at least two documented seizures. The first occurred in February 2015, but the record does not provide specific details regarding this episode. AR 947. The second seizure occurred during a doctor's visit in August 2016. AR 946. On a visit to discuss Plaintiff's higher-than-normal anxiety, her eyes suddenly rolled back in her head and her whole body started shaking. *Id.* She woke up on the floor and did not know what had happened. *Id.* While the ER physician did diagnose Plaintiff with a seizure, the doctor found no evidence of repeated seizures or a seizure disorder. AR 950.

There was an additional seizure-like episode in April of 2015. AR 851. Plaintiff stated that she was looking at her phone when her vision suddenly got very blurry. *Id.* She closed her eyes to rub them, but then could not reopen them and her hands clenched. *Id.* She fell to the floor and was reportedly unresponsive for several minutes. *Id.* The ER physician, however, attributed this episode to a syncope rather than a seizure. *Id.*

Plaintiff also reported seizures occurring in January of 2017. AR 1124. She stated she had two episodes in the same week and a third the following week. *Id.* However, no other evidence in the record supports Plaintiff's report of experiencing three seizures in two weeks.

Plaintiff only suffered from two documented seizures: one in February of 2015, and another in August of 2016. AR 946–47. Plaintiff thought she had suffered a seizure in April of 2015, but the emergency room physician determined that it was a syncope and not a seizure. AR 851. Additionally, Plaintiff's three reported seizures in January of 2017 are not supported by medical evidence. At no point did any doctor diagnose Plaintiff with a seizure disorder. For these reasons, the Court finds that the ALJ did not err in determining that Plaintiff's seizures were non-severe.

Plaintiff argues that it is impossible for a person to experience a seizure for a continuous 12-month span supporting that the ALJ's finding of non-severity was in error. ECF No. 11 at 8. However, Plaintiff misunderstands the durational requirement. The ALJ did not find that Plaintiff needed to be in a continuous state of seizure for 12 months, but rather that an alleged seizure disorder needed to be present or expected to be present for a continuous 12 month period to conclude that the impairment was severe. *See* 42 U.S.C. §§ 423(d)(1)(A). Considering Plaintiff was never diagnosed with a seizure disorder, and only experienced two documented seizures, which were 18 months apart, the ALJ's finding is supported by substantial evidence.

Plaintiff argues that experiencing seizures every two months is enough to meet the durational requirement, citing the Impairment Listing Appendices of the Social Security Act. ECF No. 11 at 8. However, these appendices are relevant for

step 3, when the decision maker compares the impairments to these listings to determine if the impairments constitute a disability as a matter of law. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Further, Plaintiff does not meet the requirements for an epilepsy disability in the Impairment Appendices. Epilepsy is a disability when the seizures occur "at least once every 2 months for at least 4 consecutive months." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02C. Plaintiff has not experienced one seizure every 2 months for 4 consecutive months.

The ALJ's conclusion that Plaintiff's seizures was non-severe is supported by substantial evidence. The Court finds that the ALJ did not err in evaluating Plaintiff's seizures.

### 3. *Mental Health Disorders – Anxiety and Depression*

Plaintiff argues that the ALJ erred in finding her anxiety and depression disorders non-severe at step two. ECF No. 11 at 8–11. The Commissioner argues Plaintiff has not shown reversible error. ECF No. 12 at 4.

The ALJ evaluated Plaintiff's mental health impairments using the "Paragraph B" criteria for mental functioning. AR 19. There are four Paragraph B criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting and managing oneself. *Id.*; *see also* 20 C.F.R. § 404, Subpt. P, App. 1. The ALJ found that Plaintiff had no limitation for criteria (1) and mild limitations for criteria (2)–(4). AR 19–21.

The ALJ gave a very detailed explanation as to why Plaintiff's mental impairments were only minor. AR 19–21. In response, Plaintiff claims that the ALJ did not consider some parts of the record or certain tests that Plaintiff underwent. ECF No. 11 at 8–11. Nonetheless, Plaintiff's arguments are the same as her arguments above, in which she attempts to present contradicting evidence to argue that the ALJ's decision is not supported by substantial evidence. In the face of contradicting evidence, the Court will defer to the ruling of the Commissioner as long as it is supported by substantial evidence. *Tackett*, 180 F.3d at 1097. The Court finds that the ALJ did not err when evaluating Plaintiff's mental health impairments because the decision is supported by substantial evidence.

### 4. *Chronic Pain Disorder*

Plaintiff argues that the ALJ erred by not considering her chronic pain disorder as a possible impairment when creating her residual functional capacity ("RFC"), and instead mistakenly grouping all of Plaintiff's pain into the Fibromyalgia analysis. ECF No. 11 at 12–13. The Commissioner argues that Plaintiff's pain was considered when creating her RFC, so a failure to find the chronic pain syndrome as severe is not an error. ECF No. 12 at 5–6.

The ALJ considered Plaintiff's fibromyalgia as non-severe at step two because it did not meet the 1990 or 2010 Criteria for the Classification of Fibromyalgia from the American College of Rheumatology. AR 22–23.

Nonetheless, when creating Plaintiff's RFC, the ALJ considered Plaintiff's pain. AR 23–28.

Here, the ALJ did not specifically discuss chronic pain disorder in step two, instead discussing only the pain as it related to Plaintiff's fibromyalgia. AR 22. However, Plaintiff prevailed at step two. The ALJ found Plaintiff's chronic heart failure and status post lumbar fusion severe. AR 18. Additionally, the ALJ still considered Plaintiff's pain at step four when creating her RFC. AR 23–28. The failure to discuss Chronic Pain Disorder or Syndrome, then, is harmless, because Plaintiff prevailed at step two and the ALJ considered Plaintiff's pain at step four when creating her RFC. *Lewis*, 498 F.3d at 911.

The ALJ did not err in his analysis of Plaintiff's pain at step two.

### 5. PTSD and Insomnia

Plaintiff argues that the ALJ erred by failing to consider her Post Traumatic Stress Disorder ("PTSD") and insomnia at step two. ECF No. 11 at 12–13. The Commissioner argues that any error committed by the ALJ at step two was harmless. ECF No. 12 at 5–7.

While the ALJ considered Plaintiff's mental health at step two, the ALJ did not specifically focus on PTSD or insomnia. AR 19–22. However, when creating Plaintiff's RFC, the ALJ did consider Plaintiff's insomnia. AR 24 (discussing sleep disturbance). Additionally, the ALJ discussed Plaintiff's mental health impairments at steps two and four. AR 19–22; 24.

Plaintiff was not harmed at step two because the ALJ found severe impairments, so the analysis continued. *Lewis*, 498 F.3d at 911. Further, the ALJ considered Plaintiff's insomnia and PTSD in creating her RFC. When these two conditions occur, any error in not finding an impairment severe at step two is harmless. *Id.*

The Court finds that the ALJ did not err at step two.

**B.    Assessing the RFC and the Medical Opinion Evidence**

Plaintiff makes two arguments regarding the ALJ's determination of her RFC. First, she argues that the RFC is unsupported by substantial evidence. ECF No. 11 at 19. Second, she argues that the ALJ erred by affording little weight to Dr. Caryn Jackson's and Dr. R.A. Cline's opinions, and gave too much weight to the opinion of the Single Decision Maker ("SDM"). *Id.* at 14–19.

### *1. Evidence Supporting Plaintiff's RFC*

Plaintiff argues that the ALJ's determination of her RFC is not supported by substantial evidence. ECF No. 11 at 19.

At step four, the decision maker determines a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). "Residual functional capacity" is defined as "what you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a). The Commissioner considers all of a claimant's medically determinable impairments, including impairments that are not found to be severe. 20 C.F.R. § 404.1545(a)(2). Social Security rulings require an ALJ to

"consider and address medical source opinions" when assessing a claimant's RFC.

Social Security Ruling 96-8p. "The RFC assessment is a function-by-function

assessment based upon all of the relevant evidence of an individual's ability to do

work-related activities." *Id.* Although the ALJ need not have engaged in a

function-by-function analysis for non-credible medical impairments, the ALJ

should not ignore limitations supported by the record and already credited by the

ALJ. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ must

consider all relevant evidence, including medical records, lay evidence, opinions,

and pain. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

However, the Court may only invalidate an RFC if it is not based on substantial

evidence. *See Jones*, 760 F.2d at 995 (citing 42 U.S.C. § 405(g)).

The ALJ determined that Plaintiff's RFC allows her to perform light work,

defined as occasionally lifting or carrying 20 pounds and frequently lifting or

carrying 10 pounds. AR 23; 20 C.F.R. § 404.1567(b). Further, the ALJ found she

can stand, walk, or sit for 6 hours in an 8 hour workday with normal breaks. AR

23. The ALJ found Plaintiff can push and pull, including operation of hand or foot

controls. *Id.* Plaintiff can frequently climb ramps and stairs and occasionally

climb ladders, ropes, or scaffolds. *Id.* She can frequently balance, stoop, kneel,

crouch, and crawl. *Id.*

The ALJ created Plaintiff's RFC by evaluating her severe and non-severe

impairments, including her cardiovascular disease, post-lumbar fusion, complaints

of pain, mental impairments, and the side effects from her medication to treat these symptoms. AR 24. The ALJ also considered the opinions of Plaintiff, Plaintiff's boyfriend, and various medical experts, and assigned weight to each of their opinions. AR 24–28.

In support of his finding, the ALJ relied on the objective medical evidence. Plaintiff continued to experience back pain following her post lumbar fusion in early 2012, but her overall condition was improving, and the physicians noted that Plaintiff had a good range of motion without much reported pain. AR 25–26. Additionally, records from mid-2016 indicated that Plaintiff's cardiovascular problems were largely under control, with Plaintiff reporting decreased chest pain. AR 26. In late 2016, Plaintiff did not have any emergency room visits for back pain or chest pain. *Id.*

The record supports the ALJ's findings regarding Plaintiff's back pain and range of movement. In the few weeks following back surgery, the surgeon reported that Plaintiff was having expected post-operation pain, but was overall doing well. AR 896. In a string of emergency room visits in November 2014, the physicians noted Plaintiff's steady gait and normal pace. AR 933. In an orthopedic follow-up from her surgery, she reported pain and falls, but overall felt 40% better and presented a full range of motion. AR 941–43. Emergency room visits continued to show a full range of motion and a steady gait with occasional back tenderness. AR 954, 964, 967.

Additionally, the record supports the ALJ's findings on Plaintiff's cardiovascular problems. Plaintiff's emergency room visits frequently showed normal heart functioning, regular heart rate and rhythm, and a lack of chest pain. AR 954. There were some instances, however, in which Plaintiff reported chest pain to emergency room physicians. AR 964. Nonetheless, when Plaintiff received an EKG in August of 2016, the results were normal. AR 949.

When faced with contradicting evidence, the Court will defer to the ruling of the Commissioner as long as it is supported by substantial evidence. *Tackett*, 180 F.3d at 1097. Here, the record supports the ALJ's RFC determination that Plaintiff has a full range of motion and is capable of light work. The Court finds that the ALJ's assessment of Plaintiff's RFC is based on substantial evidence. Therefore, the ALJ did not err in creating Plaintiff's RFC.

### 2. Weighing of Opinion Evidence in Creating Plaintiff's RFC

Plaintiff argues that the ALJ wrongly afforded Dr. Caryn Jackson's opinions and Dr. R.A. Cline's opinions little weight in creating her RFC. ECF No. 11 at 14–18. Further, she argues that the ALJ afforded too much weight to the SDM's determination of Plaintiff's RFC. *Id.* at 19. The Commissioner argues that the ALJ appropriately weighed all of the evidence in determining Plaintiff's RFC. ECF No. 12 at 8–13.

The ALJ is responsible for resolving conflicting medical opinions and determining credibility. *Batson*, 359 F.3d at 1195. If the ALJ finds that the opinion

of a treating or examining physician is not contradicted, the physician's opinion can only be rejected with clear and convincing reasons supported by substantial evidence. *Bayliss*, 427 F.3d at 1216. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ must provide legally sufficient reasons for discrediting the testimony of witnesses. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding that the ALJ provided adequate reasons for not fully crediting witness's statements). Failure to do so may result in reversal or remand.

Plaintiff first argues that the ALJ inappropriately afforded little weight to Dr. Caryn Jackson's opinion on Plaintiff's ability to work a 40-hour work week. ECF No. 11 at 14. Plaintiff argues that Dr. Jackson's opinion is legitimate even though it came in the form of a one-page checkbox document because Dr. Jackson had a treating relationship with Plaintiff and was familiar with all her medical issues. *Id.* at 16. Additionally, Plaintiff argues that the ALJ failed to develop a record of clear and convincing evidence explaining his decision to afford Dr. Jackson's opinion little weight. *Id.* at 15–17.

The Commissioner argues that Dr. Jackson's opinion lacked "supportability," which is the amount of medical evidence presented with an opinion as support for that opinion. ECF No. 12 at 9; *see also* 20 C.F.R. § 404.1527(c)(3). Further, the Commissioner argues that the ALJ gave sufficient reasons to afford Dr. Jackson's

opinion little weight, and that those reasons are supported by substantial evidence. ECF No. 12 at 9–10.

The ALJ found that Dr. Jackson's opinion came in the form of a one-page medical questionnaire and concluded that Plaintiff is unable to perform any type of work on a 40-hour work week schedule. AR 27. The ALJ first found that Dr. Jackson's opinion was inappropriate for her to make because only the ALJ can determine legal disability. *Id.* Additionally, the ALJ found that the whole medical record contradicts Dr. Jackson's opinion. *Id.* For these reasons, the ALJ afforded Dr. Jackson's opinion little weight. *Id.*

Dr. Jackson's opinion was brief, conclusory, and unsupported by findings. Particularly noteworthy is that the opinion came in the form of a checkbox, one-page form, in which Dr. Jackson claimed that Plaintiff could not work 40 hours a week and then offered brief medical diagnoses in a provided box. AR 1189. There is no explanation of the effect that Plaintiff's seizures, depression, anxiety, PTSD, or intervertebral disc disorder would have on her ability to work 40 hours a week. *Id.* "The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). An ALJ may reject a medical opinion, even one from a treating physician, if it is brief and conclusory. *Thomas*, 278 F.3d at 957. Because Dr. Jackson failed to provide a more robust explanation of her opinion on Plaintiff's ability to work, the ALJ did not err when he afforded her opinion little weight.

The ALJ also provided clear and convincing reasons to afford Dr. Jackson's opinion little weight. He clearly stated that he gave little weight to Dr. Jackson's opinion because it was an unsupported, unexplained opinion contradicted by the complete medical record. AR 27. While Plaintiff argues that the ALJ failed to develop a record of his findings, the ALJ cited to medical evidence in making his determination on the weight afforded to Dr. Jackson's opinion. *See* AR 27. Further, the ALJ noted that Dr. Jackson's opinion is contradicted by the entire medical record, which the ALJ considered in coming to his conclusions. AR 17–29.

For these reasons, the Court finds that the ALJ properly afforded Dr. Jackson's opinion little weight, and based that decision on clear and convincing reasons supported by substantial evidence.

Plaintiff also argues that the ALJ erred when affording little weight to Dr. R.A. Cline's psychiatric evaluation of Plaintiff. ECF No. 11 at 17–18. In particular, Plaintiff argues that the ALJ's findings ignore several psychological evaluations in which Plaintiff showed impairment in concentration, mood, insight, and judgment. *Id.* at 17. The Commissioner argues that the ALJ appropriately rejected Dr. Cline's opinions. ECF No. 12 at 11–12.

The ALJ afforded Dr. Cline's opinions little weight because the opinions appeared to overstate Plaintiff's mental impairments. *Id.* Specifically, the ALJ found that the rest of the medical record contradicts Dr. Cline's findings. *Id.* The ALJ noted that outside of Dr. Cline's analysis, Plaintiff's mental impairments were

mild.  AR 21–22.  Due to these contradictions, the ALJ afforded Dr. Cline's

opinions on Plaintiff's mental impairments little weight.  AR 21.

In affording Dr. Cline's opinions little weight, the ALJ noted several different

times in which Plaintiff's mental limitations were mild.  AR 21.  The record supports

this finding.  During her emergency room visits, Plaintiff frequently displayed

normal behavior and mental acuity.  AR 950–51, 955–56, 960, 991.  Even in her

psychiatric visits, Plaintiff often displayed tranquil mood, full affect, and judgment

within normal limits.  AR 1148, 1160–61, 1175, 1177.  Whenever the psychiatrist

found mental impairments, the impairments were usually mild at worst.  *Id.*  Further,

Plaintiff herself reported that her depression and mood improved and were well-

controlled on medication.  AR 1132.

The rest of the objective medical evidence in the record indicates that

Plaintiff's mental impairments were mild at worst.  The ALJ stated this as his reason

for affording Dr. Cline's opinion little weight.  AR 21–22.  Thus, the Court cannot

say that the ALJ failed to give clear and convincing reasons supported by substantial

evidence to afford little weight to Dr. Cline's opinions.  The ALJ did not err in

giving little weight to Dr. Cline's opinions.

Last, Plaintiff argues that the ALJ gave inappropriate weight to the RFC found

by the single decision maker ("SDM") at an earlier stage of Plaintiff's social security

claim.  ECF No. 11 at 18–19.  Plaintiff contends that the SDM and ALJ found the

same RFCs for Plaintiff, arguing that the ALJ inappropriately relied on the SDM's

determination of Plaintiff's RFC. *Id.* The Commissioner argues that the ALJ assigned no weight to the SDM's opinion. ECF No. 12 at 10–11.

An ALJ cannot afford any weight to an SDM's opinion in determining a claimant's RFC because the SDM is not a medical expert. *Correa v. Berryhill*, Dkt. No. 17-cv-732, 2018 WL 2254368, at *9 (E.D. Cal. May 17, 2018); *see also* Social Security Programs Operation Manual System § DI 24510.050 ("SDM-completed forms are not opinion evidence at the appeal levels."). However, the ALJ here explicitly stated that he afforded no weight to the SDM's RFC finding: "Since this represents an administrative finding, not an opinion, the undersigned declines to weigh the determination." AR 27. Just because the RFC determinations from the SDM and ALJ were the same does not mean that the ALJ gave any weight to the SDM's opinion, especially when the ALJ explicitly states that he declines to weigh the SDM's finding. Thus, Plaintiff's argument that the ALJ gave weight to the SDM's RFC determination fails.

The ALJ did not err in determining Plaintiff's RFC and in his decision to afford two opinions little weight.

## C.    Assessing the Weight Afforded to Plaintiff's Subjective Testimony

Plaintiff argues that the ALJ inappropriately rejected her subjective testimony. ECF No. 11 at 19–21. The Commissioner argues that the ALJ provided sufficient reasoning to reject Plaintiff's subjective testimony. ECF No. 12 at 13–16.

When assessing the credibility of the claimant's subjective testimony, the ALJ engages in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). If the objective medical evidence exists, and there is no evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons supported by substantial evidence for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1281–84. To find a claimant not credible, the ALJ must rely on reasons unrelated to the claimant's testimony, conflicts between the claimant's testimony and the claimant's conduct, or internal contradictions in the testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ cannot reject a claimant's subjective pain testimony solely based on a lack of support from objective medical evidence. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

If an ALJ finds that the claimant spends a substantial part of her day engaged in physical functions transferable to a work environment, then the ALJ may discredit the claimant's testimony. *Verigan v. Halter*, 260 F.3d 1044, 1049–50 (9th Cir. 2001). However, carrying on certain daily activities does not detract from a claimant's testimony if those activities are not necessarily transferable to a work setting. *Id.* The Social Security Act does not require claimants be utterly incapacitated to be disabled. *Fair*, 885 F.2d at 603.

A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted).

The ALJ concluded that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her conditions were not consistent with the full medical record. AR 27. First, the ALJ found that Plaintiff walked her dog, took care of her pets, shopped in stores, and folded her laundry on a regular basis. *Id.* Second, the ALJ found Plaintiff's use of a walker is not corroborated by the medical record. *Id.* Third, the ALJ found the medical record did not support Plaintiff's complaints of back pain that would require her to lie down for 1 to 2 hours a day. AR 28. Finally, the ALJ found that Plaintiff stopped working because she was laid off for reasons other than her medical conditions. *Id.* Therefore, the ALJ concluded that the Plaintiff's statements regarding the intensity, persistence, and limiting effects of Plaintiff's conditions were not reliable. *Id.*

Plaintiff argues that the ALJ rejected her subjective testimony partially based on the lack of corroborating objective medical evidence. ECF No. 11 at 20–21. However, the ALJ's determination of Plaintiff's credibility was based on more than

just a lack of objective medical evidence.  The determination was also based on contradictions between Plaintiff's claims and the testimony of her own conduct.  As the ALJ found, Plaintiff is able to engage in activities that require walking, standing, and a range of motion to complete, including walking the dog and shopping at grocery stores.  AR 27.  While Plaintiff states she does not do these activities alone, she nonetheless states that she is able to complete them.  AR 303.  Further, several medical records reflected Plaintiff's steady gait and lack of back pain when she visited the emergency room.  AR 27–28; *see also* AR 908, 985, 1005.

While an ALJ cannot reject a claimant's subjective testimony for a lack of objective medical support, an ALJ may do so based on contradictory testimony or testimony regarding actions inconsistent with the symptoms alleged.  *See Light*, 119 F.3d at 792.  Here, the ALJ rejected Plaintiff's subjective testimony because of the contradictions between Plaintiff's activities and the severity of the symptoms she suffers.  AR 26–28.  The ALJ provided clear, specific, and convincing reasons supported by substantial evidence to reject Plaintiff's testimony regarding the severity of her symptoms.  *Id.*  Therefore, the Court finds the ALJ did not err in rejecting Plaintiff's subjective testimony.

## CONCLUSION

Plaintiff argues that the ALJ's decision should be reversed and she should be immediately awarded benefits.  ECF No. 11 at 21.  Plaintiff urges the Court to apply

the "credit-as-true" rule to Dr. Jackson's testimony, which would allow the Court to award benefits without a remand. ECF No. 11 at 21. The credit-as-true rule states that a district court may award benefits without a remand for administrative proceedings if (1) the record has been fully developed; (2) the ALJ improperly disregards a doctor's or claimant's testimony; and (3) if the improperly disregarded evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Here, the Court did not find that the ALJ erred in any of his credibility determinations. Thus, the credit-as-true rule does not apply.

Accordingly, **IT IS HEREBY ORDERED:**

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED.**

2.    Defendant's Motion for Summary Judgment**, ECF No. 12**, is **GRANTED.**

3.    Judgment shall be entered in favor of Defendant.

The District Court Clerk is directed to enter this Order, enter judgment for Defendant, provide copies to counsel, and **close this case**.

**DATED** September 19, 2018.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge
